# COUNTY OF PISCATAQUIS.

JOHN POLLARD *versus* SOMERSET MUTUAL FIRE INSURANCE CO.

The term *alienation*, as applied to real estate, has a technical signification, and any transfer, short of a conveyance of the title, is not an alienation thereof.

The Act incorporating an insurance company, provided " that when the property insured shall be *alienated*, by sale or otherwise, the policy shall thereupon be void ;" — *Held*, that a mortgage of the insured property is not an alienation, within the meaning of that Act.

To avoid a policy by an alienation of the property, the transfer must be complete and entire, unless the contract of insurance otherwise provides.

But where there is a provision that the policy shall be void, if the property insured shall be alienated " in whole or *in part*," a mortgage violates such provision and avoids the policy.

The assignee of a policy of insurance, transferred with the knowledge and assent of the company, may, in case of loss by fire, maintain an action, in the name of the assignor, for the amount insured.

The assignor cannot discharge such action, nor would payment to him by the company, avail against the claim of the assignee.

The company, having assented to the assignment, cannot take advantage of any subsequent acts of the assignor.

By the rules of the common law, the assignee always brings his action in' the name of the assignor.

The assured having mortgaged his property and assigned his policy, the assignee must bring his action in the name of the assignor, even if the assignment were made with consent of the insurers, unless they have made an express promise to the assignee.

Courts of law, in all cases, will uphold and protect the equitable interests of assignees.

ON AGREED STATEMENT OF FACTS, from *Nisi Prius*.

This was an action of assumpsit upon a policy of insurance, made by the defendant corporation to the plaintiff, Nov. 15, 1848.

On Dec. 27, 1848, the plaintiff mortgaged the insured property to Oliver Eveleth and likewise assigned his policy. In March, 1850, he conveyed one undivided half part of the same premises, subject to the mortgage, to one B. F. Greeley.

Of these two conveyances, and of the assignment of the plaintiff's policy, the defendants had due notice, and assented thereto.

In February, 1852, one Charles P. Watson and one David Smith, proposed to enter into possession of said premises, and to occupy the same as a hotel, under an agreement to purchase for the sum of thirty-two hundred dollars, provided said Eveleth would give them a bond to convey the same upon certain conditions, to which the owners assented. In accordance with that understanding, on the 28th day of February, A. D. 1852, Pollard and Greeley by deeds of quitclaim conveyed their interest in the premises to Eveleth, and Eveleth, by his bond, agreed to convey said premises to Watson & Smith upon their performing certain conditions precedent.

Eveleth, also, on the same day, in consideration of the deeds of Pollard and Greeley to him, by his bond, agreed to re-convey said premises to them in case Smith & Watson should fail to perform, according to the stipulations of his bond to them, and upon the delivery by them (Pollard and Greeley) to him of their mortgage deed of the same, duly executed, to secure the payment of such sum as should be due to him (Eveleth) upon the original mortgage notes from said Pollard to him. Said bonds were the only consideration which Eveleth gave for the deeds from Pollard and Greeley to him. The deeds were recorded soon after their execution, but the bonds were not recorded.

Smith & Watson entered into possession and occupancy of the property, in March, 1852, and so remained until February 5th, 1853; but they entirely failed to fulfill the conditions of the bond from Eveleth, whereby they had forfeited all claim to a conveyance of the property by virtue thereof, and only remained in as mere tenants of Pollard and Greeley, to whom they paid rent.

Defendants were notified of the occupancy, to which they assented in writing.

On February 5th, 1853, the buildings insured, except the stable and shed, and the furniture, were entirely destroyed by fire, without fault or design on the part of the assured.

On February 28, 1853, Eveleth, in fulfillment of his bonds to Pollard and Greeley, conveyed the premises, with the remaining buildings, to them, taking back a mortgage thereof to secure the payment of the original mortgage notes, upon which there was due more than the amount claimed in this suit. On the same day Pollard consented in writing that the amount due upon the policy might be paid to said Eveleth, to be allowed upon said original mortgage notes, of which defendants had notice.

The Court, in this case, may draw inferences as a jury might do upon such of the foregoing testimony as is legally admissible, and if the action cannot be sustained by reason of the 9th section of the act of incorporation, and article 6th of the rules and regulations of the company relating to the alienation of insured property, and the transactions of February 28, 1852, a nonsuit is to be entered, and defendants are to be allowed their costs. Otherwise, a default is to be entered, or judgment rendered for such sum as the plaintiff may be lawfully entitled to recover, and costs. If the Court shall be of opinion that the action should have been in favor of Oliver Eveleth, the record may be so amended, and judgment rendered for said Eveleth for such damages as he may be entitled to, with interest and costs.

*J. H. Rice*, for plaintiff.

1. By the facts agreed in this case, there is but a single question presented, upon which the Court is required to adjudicate; and that is whether there was, on the 28th of February, 1852, such an alienation of the insured property, or any part thereof, as by the contract of insurance between the parties, worked a forfeiture of the policy, and justifies and protects the defendants in refusing indemnity to the plaintiff for the loss of the property.

The deeds to Eveleth and his bonds of defeasance back, were but a new mortgage for the security of the same debt, and a debt which the defendants had already consented might be so secured, and that the mortgagee might hold their policy

or a lien upon it, as further security for the same debt. R. S., c. 125, § 1; Statutes of 1844, c. 107.

2. Eveleth was not a stranger to the defendants; for they had already admitted him to an interest in the property and in the policy, to an amount greater than the company could, in any event, be liable to pay; and if he was not a stranger, and had acquired the entire fee, without the consent of the defendants, it ought not to defeat his right to recover for the loss, in the name of Pollard, or in his own name. Angell on Fire and Life Insurance, p. 233, § 197. Even if Eveleth is to be regarded as a stranger, there was not such an alienation of the property, as would defeat a recovery upon the policy by the plaintiff; for if he retained and had, at the time of the loss, but a partial interest — any insurable interest — it should be protected. Angell on Insurance, p. 230, § § 193 and 194, and page 232, § 196, and cases cited.

3. The assignee had a right to mortgage the property without the consent of the company, so long as he remained in possession. 23 Pick. 418; Angell on Ins., p. 243, § § 209 and 210. And the case finds that plaintiff did retain possession and occupancy of the property by Watson & Smith, his tenants, to which defendants gave their assent.

*James T. Leavitt*, for defendants, contended: —

1. That this was such an alienation of the insured property as, under the Act of incorporation, would defeat the plaintiff's claim. *Abbot* v. *H. M. F. Ins. Co.*, 30 Maine, 414; *Adams* v. *R. M. F. Ins. Co.*, 29 Maine, 292.

2. That the action was wrongly commenced in the name of the assignor of the policy.

*Rice*, for plaintiff, in reply.

APPLETON, J. — The plaintiff, having on the 15th Nov. 1848, effected insurance on a tavern in Greenville, and the furniture therein, on Dec. 27th, following, mortgaged the same to Oliver Eveleth, and at the same time assigned the policy of insurance thereon to him, of all which, the case finds the defendants had due notice and to which they assented.

The Act of incorporation, under which the defendants claim to exercise corporate rights, provides, in § 9, " that when the property insured *shall be alienated by sale or otherwise, the policy shall thereupon be void,* and be surrendered to the directors of said company, to be cancelled," &c.

It has been held, in a series of cases, that a mortgage is not an alienation of the premises insured, within the meaning of this Act. " The term alienation," says CRIPPEN, J., in *Mastin* v. *Madison Ins. Co.*, 11 Barb. 224, "has a legal technical meaning, and any transfer of real estate, short of a conveyance of the title, is not an alienation of the estate. No matter in what form the sale may be made, unless the title is conveyed to the purchaser, the estate is not alienated." These views have been affirmed in repeated decisions in New York. *Allen* v. *Hudson River Mut. Ins. Co.*, 19. Barb. 445; *Tillou* v. *Kingston M. F. Ins. Co.*, 1 Selden, 405. It has been decided in New Hampshire that the mortgage of property insured by the insurer, is not an alienation within the meaning of the clause in the charter prohibiting alienation. *Rollins* v. *Columbian Ins. Co.* 5 Foster, 204; *Dutton* v. *N. E. Ins. Co.* 9 Foster, 153; *Folsom* v. *Belknap M. F. Ins. Co.* 10 N. H. 231. The same principles were sustained in Massachusetts in *Lazarus* v. *Com. Ins. Co.* 5 Pick. 76; *Jackson* v. *Mass. M. F. Ins. Co.* 23 Pick. 418. In *Adams* v. *Rockingham M. F. Ins. Co.* 29 Maine, 294, it was held that to avoid an insurance, the alienation of the estate insured must be complete and entire.

It is insisted, in defence, that the plaintiff, after his mortgage and the assignment of the policy, has entirely disposed of the equity of redemption, and that there is an alienation, and that consequently the action is not maintainable.

Courts of law, in all cases, uphold and protect the equitable interests of the assignee. The policy, by its terms, is payable to the plaintiff or his assigns. The assignment to Eveleth having been made with the knowledge and assent of the defendants thereto, the assignor ceases to have the power to defeat the rights of the assignee. He cannot discharge

the action commenced in his own name. A payment to him by the insurers, with a knowledge of the assignment, would be of no avail against the claims of the equitable assignee. The nominal plaintiff has no power to defeat the claims of the party in interest; and the defendants, knowing of, and assenting to the assignment, are so far parties to the same that they cannot take advantage of any subsequent acts of the assignor.

In *Traders' Ins. Co.* v. *Robert*, 9 Wend. 404, a policy of insurance was effected by a mortgager, and the policy, with the assent of the assurers, was assigned to the mortgagee, and a loss occurred. It was held, in an action on the policy by the mortgagee, in the name of the mortgager, that it was no bar to a recovery, that subsequently to the assignment, the mortgager effected a second assurance, and neglected to give notice to the first assurers, although there is an express condition that the policy shall be void in case of such second assurance, and neglect of notice by the insured or his assigns. "Had the nominal plaintiff in this case," remarks SAVAGE, C. J., "executed a release to the insurance company, it would have no effect upon the rights of the assignee; and if he could not directly discharge the right of action which he had assigned, surely he cannot do it indirectly." In *Tillou* v. *Kingston M. F. Ins. Co.*, 1 Selden, 405, FOOT, J., in delivering the opinion of the Court, says: "The assignment of a policy of insurance, with the assent of the insurers, creates new and mutual relations and rights between the assignee and the insurers, which, on the plainest principles of law and justice, cannot be changed or impaired by the acts of a third person over whom the injured party has no control." In *Allen* v. *Hudson River M. F. Ins. Co.*, 19 Barb. 445, the insured assigned his policy with the assent of the insurers, and subsequently procured a new insurance, without giving notice, which by the terms of the policy rendered it void. "It is insisted," says HARRIS, J., "by the defendants, that the insurance in the Columbian Insurance Company, and the omission to give notice of such insurance till after the fire, discharged them

from further obligations upon the policy. I am inclined to think this objection would have been well founded had the policy remained in the hands of the party originally insured. But it having been assigned to the plaintiffs before the last insurance was effected, and that too with the knowledge and assent of the defendants, it was no longer in the power of the assignors to do any thing to impair the policy in the hands of their assignees." In *Conover* v. *Ins. Co.* 1 Coms. 290, JOHNSON, J., says: "Nor are we called upon to decide whether the absolute alienation by Conover, after the assignment of the policy, is a good defence, as the point was not raised at the trial. But if we were, I do not see how the interest of Gridley, the assignee, could be affected by it."

As the assignment to Eveleth has been assented to by the defendants, his rights cannot be impaired or defeated by the subsequent proceedings of the nominal plaintiff. It is not necessary, therefore, to inquire whether there has or has not been a subsequent entire alienation of the estate.

In *Abbott* v. *Hampden M. F. Ins. Co.* 30 Maine, 414, it was one of the by-laws of the defendants, that if the assured should alienate in whole or in part that the insurance should be void; and under this special provision, it was held that a mortgage was an alienation in part. But there is no such provision in the Act incorporating the defendants, nor in their by-laws. Nor in that case was there any assent to assignment of the policy as there is in the one under consideration.

By the agreement of the parties, if the action is not properly commenced in the name of Pollard, but is maintainable in that of Eveleth, the assignee, the proceeding may be amended and the cause proceed to judgment in his name.

There is a class of cases where, by special legislation, authority has been given to maintain a suit in the name of the assignee. There is another class in which suits have been upheld upon the ground of a special promise by the defendant to the assignee. But the case before us would seem to fall within neither of these classes.

The action, in all cases, by the rules of the common law, is

maintained by the assignee in cases of assignment, in the name of the assignor, but for his benefit. *Flanagan* v. *Camden M. F. Ins. Co.* 1 Dutcher, 507. A mortgage by the insured, of property covered by the policy, is not "an alienation by sale or otherwise;" and when the insured has executed a mortgage on the insured property, and has assigned his policy to the mortgagee, before the happening of the loss, the suit for the amount insured must be in the name of the party insured in the policy. *Conover* v. *Ins. Co.* 3 Den. 254. Even if the assignment was made with the consent of the assurers, still the action must be in the name of the assignor, unless there be an express promise to the assignee. *Jessel* v. *Williamsburg Ins. Co.* 3 Hill, 88. In the absence of any provision in the charter or by-laws of a mutual fire insurance company, whereby the assignee becomes a member of the company, the action, in case of loss, must be in the name of the assured with whom the contract was made. *Folsom* v. *Belknap Co. M. F. Ins. Co.* 10 Foster, 231. The Supreme Court of Massachusetts, in *Bowdwitch M. F. Ins. Co.* v. *Warren*, 3 Gray, 415, seem to indicate their view of the law to be the same as has been already suggested.

But the agreement of parties in this case, renders the decision of this question unimportant, as the rights of Eveleth are equally entitled to protection, whether the action is in his own name or in that of his assignor, after notice of and assent to the assignment. In either event a default must be entered.

*Defendants defaulted.*

RICE and GOODENOW, J. J., concurred.

MAY, J., concurred in the result.